UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO

In Re: )
) **JUDGE RICHARD L. SPEER**
Lori A. Hernandez )
) Case No. 08-31588
Debtor(s) )
)

### DECISION AND ORDER

This cause comes before the Court on the Motion of the United States Trustee to Dismiss the Debtor's case pursuant to 11 U.S.C. §§ 707(b)(1), 707(b)(2) & 707(b)(3). (Doc. No. 16). At the conclusion of the Hearing, the Court took the matter under advisement so as to afford time to thoroughly consider the issues raised by the Parties. (Doc. No. 26). During this time, the Court, in reviewing the evidence, issued an order setting forth that the "Movant had ostensibly made a *prima facie* case for dismissal." (Doc. No. 28). Notwithstanding, the Court afforded in said order the Debtor the opportunity to submit updated financial information, as well as any other relevant evidence, to rebut the United States Trustee's *prima facie* case for Dismissal. *Id.* The Court has now received this evidence, and finds, for the reasons set forth herein, that the Motion of the United States Trustee to Dismiss has merit.

### BACKGROUND

On April 3, 2008, the Debtor, Lori Hernandez, filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. At the time she filed her petition, the Debtor was unmarried and had two minor-age children. In her petition, the Debtor scheduled nonpriority unsecured debts totaling $98,333.84.

In re: Lori A. Hernandez
Case No. 08-31588

## DISCUSSION

This matter is before the Court on the Motion of the United States Trustee to Dismiss. Matters concerning the dismissal of a case, which affects both the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(J)/(O). As a core proceeding, this Court has been conferred with the jurisdictional authority to enter a final order in this matter. 28 U.S.C. § 157(b)(1).

The Motion of the United States Trustee ("UST") to Dismiss is brought pursuant to 11 U.S.C. § 707(b)(1), § 707(b)(2) and § 707(b)(3). These sections operate together, with § 707(b)(1) first setting forth the foundational mandate, providing that, where the granting of relief under Chapter 7 would be an abuse, the debtor's case is to be dismissed. In the language of § 707(b)(1):

> (b)(1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

Sections 707(b)(2) and 707(b)(3) then set forth separate methodologies by which a determination of abuse is to be assessed under § 707(b)(1).

First, § 707(b)(2) provides, under a 'means test' formula, that abuse is to be presumed in instances where an ability to pay threshold is exceeded. Second, § 707(b)(3) sets forth that, even if no presumption of abuse arises, a court may still dismiss a case based upon the particular circumstances of the case. These provisions are read in the disjunctive, thereby making a determination of abuse under either § 707(b)(2) or § 707(b)(3) grounds to dismiss the debtor's case in accordance with § 707(b)(1).

Page 2

**In re: Lori A. Hernandez**
**Case No. 08-31588**

The first of the methodologies, the 'means test' formula of § 707(b)(2), represents the embodiment of the Congressional policy that debtors with the ability to repay their debts be required to do so and "that there be an easily applied formula for determining when the Court should presume that a debtor is abusing the system by filing a Chapter 7 petition." *In re Fowler*, 349 B.R. 414, 419 (Bankr. D.Del. 2006). It is purely an objective test, and was intended to eliminate judicial discretion regarding determinations of abuse under § 707(b)(1). *In re Sullivan*, 370 B.R. 314, 318 (Bankr. D.Mont. 2007). Its actual reach, however, is limited to only a certain segment of debtors: those with income above the state median income for household of the same size. 11 U.S.C. § 707(b)(7).

Although very detailed in its operation, the 'means test' formula of § 707(b)(2) is conceptually simple. One first determines a debtor's income and then reduces that amount by those expenses permitted in the statute. 11 U.S.C. § 707(b)(2)(A). If, after performing this calculation, the debtor's remaining income, as calculated over a five-year period, satisfies one of these two conditions, the granting of relief in the case is then presumed to be abusive: (1) the debtor's income is greater than $10,950.00; or (2) although less than $10,950.00, the debtor's income is greater than $6,575.00 and that amount will pay more than 25% of the debtor's unsecured debt. On a per month basis, these income thresholds total $182.50 and $159.58 respectively.

To implement the 'means test,' a debtor filing a petition under Chapter 7 of the Bankruptcy Code is required to include with their petition a Form B22A. FED.R.BANKR.P. 1007(b)(4) (interim rule).[1] In this form, the debtor must set forth a statement as to their current monthly income and, if

---

[1] The Advisory Committee on Bankruptcy Rules approved Interim Bankruptcy Rules to guide practice under the 2005 amendments to the Bankruptcy Code, By General Order 2005-11, as amended, bankruptcy courts in the Northern District of Ohio have adopted the interim rules, pending the formal adoption of amendments to the Federal Rules of Bankruptcy Procedure, effective December 1, 2008.

Page 3

In re: Lori A. Hernandez
Case No. 08-31588

applicable, their 'means test' calculation. *Id*. Once completed, a debtor must disclose in Form B22A whether their 'means test' calculation gives rise to a presumption of abuse. *Id*.

In this matter, the Debtor, as required by Bankruptcy Rule 1007(b)(4), filed with her petition a completed Official Bankruptcy Form B22A. (Doc. No. 1). In this form, the Debtor set forth an annualized income of $63,103.56, an amount which exceeded the state-median income of $59,786.00[2] for a like-size household. As a result, the Debtor then completed the 'means test' calculation of § 707(b)(2). This calculation, according to the Debtor, resulted in remaining income of $910.47, amounting to $54,628.20 when calculated over 60 months. Because this level of income exceeded the abuse threshold of $10,950.00, the Debtor checked the box in Form B22A, providing that the "presumption arises." This statement, according to the UST, is a "judicial admission that the presumption of abuse arises, or is substantive evidence that the presumption of abuse arises." (Doc. No. 36, at pg. 2).

The evidentiary effect of those statements made by a debtor in the forms accompanying a bankruptcy petition is not a straightforward matter. 4 Collier on Bankruptcy ¶ 521.08[2][a] (15th ed. rev.). In some contexts, courts have treated the debtor's statement as a judicial admission, making it conclusive of the matter. *See In re Fordson Engr. Corp.*, 25 B.R. 506, 509 (Bankr. E.D.Mich.1982) (judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact). In other contexts, however, the statement is treated as only an evidentiary admission, meaning that it is subject to contradiction or explanation. *Id*.

---

[2] http://www.usdoj.gov/ust/eo/bapcpa/20080317/bci_data/median_income_table.htm

Page 4

In re: Lori A. Hernandez
Case No. 08-31588

Regardless, it would not appear that the Debtor's position against dismissal seeks to directly contradict her admission in Form B22A that, insofar as it concerns § 707(b)(2), the filing of her case gave rise to a presumption of abuse. Rather, the Debtor's position may be best described as an equitable argument, asking the Court to recognize that, while her 'means test' calculation may be technically accurate, it is not representative of her actual financial condition. According to the Debtor, this situation arises largely because "she had temporarily taken on two jobs before the filing in an attempt to keep up with her monthly expenses." (Doc. No. 20). However, since filing her bankruptcy, the Debtor related that "she is no longer intending to keep the second job in light of her obligations to her family of two children and a full time job." *Id.* The Debtor also called this Court's attention to the fact that, subsequent to filing for bankruptcy relief, she married, an event which the Debtor related significantly changed the dynamics of her financial situation

The 'means test' calculation of § 707(b)(2) is a mechanical formula based on a snapshot of a debtor's financial situation as of the petition date. *In re Thomas*, 395 B.R. 914 (6th Cir. B.A.P. 2008). A debtor's permissible expenses are standardized so that all similarly-situated debtors are entitled to claim the same budgetary expenditures. A debtor's income, in turn, is determined by a historical average, known as "current monthly income" (a.k.a., CMI) which is defined, generally, as the debtor's average income over the six-month period prior to filing. 11 U.S.C. § 109(10A).

While providing objectivity, the 'means test's' one-size-fits-all approach means that it is based only superficially on a debtor's financial reality. *In re Prada*, 391 B.R. 492, 497 (Bankr. S.D.Fla. 2008). Future events and plans of a debtor are simply not taken into account in any 'means test' calculation. *In re Burden*, 380 B.R. 194, 202 (Bankr. W.D.Mo. 2007). This, as pointed out by the Debtor, means that those postpetition changes to her income, even if anticipated, are not taken into account. For this and other reasons, the 'means test' has been criticized as "a blind legislative formula that attempts to direct debtors to a Chapter that provides for at least some measure of

Page 5

**Case No. 08-31588**

repayment to unsecured creditors over a period of years." *In re Barraza*, 346 B.R. 724, 729 (Bankr. N.D.Tex.2006).

Yet, regardless of the weaknesses with the 'means test,' its application by the Congress of the United States has been determined to be fair. *In re Hartwick*, 352 B.R. 867, 868 (Bankr. D.Minn.2006). It is not this Court's role to second guess such a determination. *See In re Holyoke Nursing Home, Inc.*, 372 F.3d 1, 5 (1st Cir. 2004) ("the equitable powers of the bankruptcy court do not entitle it to second-guess Congress's implicit policy choices."). Bankruptcy relief is not a right, and thus Congress may promulgate reasonable restrictions on its application. *Schultz v. U.S.*, 529 F.3d 343 (6th Cir. 2008). In this way, it is hardly unreasonable to expect that Chapter 7 relief may denied to a class of debtors whom Congress has determined have the outward ability to repay their obligations.

As a legal matter, therefore, whatever the merits of the Debtor's position, that in her particular case the application of the 'means test' of § 707(b)(2) causes an inequitable result, the Court must decline the Debtor's invitation to disregard the test's application. Accordingly, since no evidence was offered that the financial figures utilized by the Debtor in her Form B22A are incorrect, the Court must assume that her conclusion regarding the 'means test' is correct: that the filing of her case gave rise to a presumption of abuse under § 707(b)(2).

Notwithstanding, even where the presumption of abuse arises under § 707(b)(2), it may still be rebutted. The conditions necessary to rebut a presumption of abuse arising under § 707(b)(2) are set forth by statute; to wit: § 707(b)(2)(B). This provision contains both substantive and procedural requirements.

First, to substantively rebut a presumption of abuse, a debtor must demonstrate "special circumstances" that justify an additional expense or income adjustment. The debtor must then show

08-31588-rls   Doc 37   FILED 12/01/08   ENTERED 12/01/08 15:44:49   Page 6 of 10

**In re: Lori A. Hernandez**
**Case No. 08-31588**

that there is no reasonable alternative to incurring the additional expense or making the income adjustment. Finally, as a substantive matter, it must be shown that the "special circumstances" reduce the debtor's remaining income below the specified benchmarks set by § 707(b)(2).

Procedurally, the substantive requirements must then be supported as follows: (1) itemizing each additional expense or income adjustment and setting forth the nature of the suggested adjustment, its amount, and its impact on the debtor's finances and the "means test" calculation; (2) providing documentation of the additional expense or income adjustment; (3) providing a detailed explanation of the 'special circumstances' that make additional expense or income adjustments necessary and reasonable; and (4) attesting under oath to the accuracy of the information provided.

These substantive and procedural requirements make the bar extremely high for any debtor seeking to rebut the presumption of abuse of § 707(b)(2). *In re Wright*, 364 B.R. 640, 642 (Bankr.N.D.Ohio 2007). And in this case, the evidence before the Court does not come close to supporting a finding that the Debtor's circumstances rise to the level necessary to rebut the presumption of abuse which the Debtor has acknowledged arises under her 'means test' calculation of § 707(b)(2).

First, the Debtor did not timely file with the Court the documentation necessary to comply with the procedural requirements of § 707(b)(2)(B). But even disregarding this deficiency, there exists no indication that the Debtor's circumstances fall within the class of "special circumstances" necessary to rebut the presumption of abuse. To qualify as a "special circumstance," of the kind sufficient to rebut the presumption of abuse, the adjustment to the debtor's expenses or income must be out of ordinary or exceptional in some way. *In re Pageau*, 383 B.R. 221 (Bankr. D.N.H. 2008). The provision provides two examples: (1) a serious medical condition; or (2) a call or order to active duty in the Armed Forces.

Page 7

In re: Lori A. Hernandez
Case No. 08-31588

However, contrary to the characteristics needed to warrant a finding of a "special circumstance," the decline the Debtor is now experiencing in her income is largely the result of her voluntary decision to decrease the number of hours that she had formerly worked. While the Court cannot belittle the Debtor's reason for decreasing her hours worked, which the Debtor related was done in an effort to spend more time with her children, such a decision does not arise to the level of a "special circumstance" as contemplated by § 707(b)(2)(B). For example, no evidence was shown that either of the Debtor's children suffers from a serious medical condition. In this regard, this Court has observed that, in order to qualify as "special circumstance," the debtor's situation must have traits in common with the statutory examples. 11 U.S.C.A. § 707(b)(2)(B). *In re Witek*, 383 B.R. 323 (Bankr. N.D.Ohio 2007). This precept likewise means that the Debtor's postpetition marriage, without more, cannot be said to qualify as a "special circumstance" as that term is used in § 707(b)(2)(B).

To hold otherwise on such matters would open the door to a plethora of potential claims of "special circumstances" by debtors seeking to make voluntary changes in their lifestyle. *See In re Krohn*, 886 F.2d at 126 (factors mitigating against abuse may include whether debtor was forced into a Chapter 7 bankruptcy by unforeseen or catastrophic events). As such, to accept the Debtor's position carries with it the potential to effectively write (or at least largely diminish) the 'means test' of § 707(b)(2) from the Code. The Court is unwilling to go down such a road.

In sum, since no evidence exists to contradict the Debtor's acknowledgment in her Form B22A that the presumption of abuse arises in her case according to the 'means test' of § 707(b)(2), the Court finds that her calculation is correct, notwithstanding any inequity that may result from the calculation. In addition, the facts of this case do not support a finding that the presumption has been rebutted according to the conditions set forth in § 707(b)(2)(B). Consequently, unless the Debtor voluntarily converts her case, the Court is bound to promptly enter an order of dismissal pursuant to § 707(b)(1).

Page 8

**In re: Lori A. Hernandez**
**Case No. 08-31588**

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

***ORDERED*** that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b)(1) if, at the opening of business on Tuesday, December 16, 2008, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

***IT IS FURTHER ORDERED*** that, subject to the Debtor's election to convert this case, the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b)(1) and § 707(b)(2), be, and is hereby, GRANTED.

Dated: December 1, 2008

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 9

# CERTIFICATE OF SERVICE

Copies were mailed this 1st day of December 2008 to:

Lori A Hernandez
1818 Birdie Drive
Toledo, OH 43615

Louis J Yoppolo
300 Madison Ave, #1200
Toledo, OH 43604

Dean Wyman
Office of the US Trustee
201 Superior Aveneue, Suite 441
Cleveland, oh 44114-1240

Douglas A Dymarkowski
5431 Main Street
Sylvania, OH 43560

                                                      /s//Diana Hernandez
                                        Deputy Clerk, U.S. Bankruptcy Court